IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BHUPINDER MOR,

Petitioner,

vs.

DAVID EASTERWOOD, Field Office Director, St. Paul ICE; MARKWAYNE MULLIN, Secretary, Department of Homeland Security; TODD BLANCHE, Attorney General, Executive Office for Immigration Review; DAVID VENTURELLA, Acting Director, Immigration and Customs Enforcement (ICE); and WARDEN/FACILITY ADMINISTRATOR, McCook ICE IGSA,

Respondents.

**4:26CV3267**

**MEMORANDUM AND ORDER ON PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

On September 2, 2026, through counsel, Petitioner Bhupinder Mor, a citizen and national of India, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Filing 1 at 1; Filing 1 at 12 (¶ 59). The Petition asserts, "Petitioner now faces potentially indefinite detention, and such re-detention [after release on recognizance] violates the [sic] *inter alia*, the Due Process Clause of the Fifth Amendment" and "the Immigration and Nationality Act ('INA')." Filing 1 at 3 (¶ 12). Consequently, Mor "seeks relief under 28 U.S.C. § 2241 and the Due Process Clause of the United States Constitution and asks for his immediate release from his illegal detention." Filing 1 at 3 (¶ 13). The Court filed an Order to Show Cause on September 8, 2026, *inter alia* directing Respondents to make a return certifying the true cause of Mor's detention and why his Petition should not be granted. Filing 3 at 5 (¶ 2). The Order to Show Cause also stated, "Upon the filing of Respondents' return(s) and Mor's reply, the Court will determine whether or not to set a hearing

on this matter prior to disposition." Filing 3 at 5 (¶ 4). After considering the parties' submissions, the Court now denies Mor's Petition without a hearing for the reasons set out below.

## I. APPLICABLE STANDARDS

The habeas statute at issue here, 28 U.S.C. § 2241, provides in pertinent part as follows:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
>
> * * *
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless--
>
>> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>>
>> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>>
>> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
>>
>> (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
>>
>> (5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(a), (c). "[A] habeas court is 'not bound in every case' to issue the writ." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Instead, "[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id.* (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court).

"In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter

as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (quoting 62 Stat 869, 964–65). "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure release from unlawful detention . . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in the original).

The core concern of habeas as a means to challenge detention is apparent from the language of § 2241. Under the statute, the writ does not extend to a prisoner unless he or she falls into one of the categories listed in § 2241(c). *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless" the prisoner falls into one of the listed categories). One such category—and the only one at issue here—is that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on a district court jurisdiction to hear habeas corpus challenges by aliens to the legality of their detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . . Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). "The typical remedy for such detention [under § 2241(c)(3)] is, of course, release." *Munaf*, 553 U.S. at 693 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), which states, "[T]he traditional function of the writ is to secure release from illegal custody").

District Courts in this Circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is

unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

After reviewing the parties' written submissions, the Court concludes that neither an evidentiary hearing nor oral argument is required because a conclusion can be reached on the legal issues presented and because even taken as true Mor's allegations of fact fail to state a claim for habeas relief. *See Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072 (8th Cir. 1988))). Therefore, the Court has considered Mor's Petition on the parties' written submissions without an evidentiary hearing or oral argument.

## II. ANALYSIS OF MOR'S CLAIMS

Mor asserts six claims for habeas relief. In Count I, he alleges a "Due Process Violation in Redetention." Filing 1 at 10 (reduced from all capitals). In Count II, he alleges a "Due Process Violation in Bond Hearing." Filing 1 at 11 (reduced from all capitals). In Count III, he alleges a "Violation of Substantive Due Process Clause." Filing 1 at 11 (reduced from all capitals). In Count IV, he alleges a "Violation of the Equal Protection Guarantee of the Fifth Amendment." Filing 1 at 11 (reduced from all capitals). In Count V, he alleges a "Violation of the Suspension Clause of the United States Constitution." Filing 1 at 13 (reduced from all capitals). In Count VI, he alleges a "Violation of the *Accardi* Doctrine with Respect to 8 C.F.R. § 287.8(c)(2)(i) and (ii)." Filing 1 at 14 (reduced from all capitals). The Court will consider Mor's three due process claims first then turn to his equal protection, suspension clause, and *Accardi* doctrine claims.

### A. The Due Process Claims

Central to Mor's due process claims is his contention that the violations of due process are demonstrated by applying the three-factor balancing test set out in *Mathews v. Eldridge*, 424 U.S.

319, 334 (1976). However, this Court has repeatedly rejected the application of such a balancing test to aliens' due process claims in § 2241 habeas cases. *See, e.g.*, *Begay Mayancha v. Mullin*, No. 4:26CV3322, 2026 WL 3216328, at *5-6 (D. Neb. Oct. 27, 2026); *Santiago Lopez v. Trump*, No. 4:26CV3286, 2026 WL 3151013, at *6–9 (D. Neb. Oct. 21, 2026); *Huerta Luna v. Blanche*, No. 8:26CV400, 2026 WL 2921164, at *4–5 (D. Neb. Sept. 29, 2026); *Alberto Rodriguez v. Jeffreys*, No. 8:25CV714, 2025 WL 3754411, at *15–17 (D. Neb. Dec. 29, 2025). This is so because in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), the Eighth Circuit explained that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee*, 115 F.4th at 931 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). More specifically, in *Banyee*, the Eighth Circuit explained that *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), "leave no room for a multi-factor 'reasonableness' test," such as the one in *Mathews*, because the Supreme Court has instead opted for "a bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee*, 115 F.4th at 933 (citing *Demore*, 538 U.S. at 527 (majority opinion)). Thus, the Court will not apply a balancing test to Mor's due process claims.

*1. The Due Process Claim Based on Redetention Lacks Merit*

Mor's due process claim in Count I of his Petition is based on the failure of the Department of Homeland Security (DHS) to determine whether he was dangerous or a flight risk in an appropriate custody proceeding in order to redetain him when he had previously been released on an order of recognizance. Filing 1 at 10–11 (¶¶ 49–50); *see also* Filing 1-3 (6/12/2023 Order of Release on Recognizance). Mor argues that his prior release established his liberty interest requiring due process to redetain him, and that *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), did not change that. Filing 1 at 5–6 (¶¶ 30, 34). Thus, he argues that his immediate release is appropriate because the Respondents identified no basis to conclude that he is a danger to the

community. Filing 1 at 6 (¶¶ 34–35). Federal Respondents argue that Mor's prior release on recognizance does not negate any of the elements of mandatory detention set out in *Avila*. Filing 5 at 1. Thus, Federal Respondents argue that the analysis is "simple" because Mor was unlawfully present in the United States without admission and so he was properly subjected to mandatory detention under 8 U.S.C. § 1225(b) pending removal when he was redetained. Filing 5 at 5. Mor's argument in reply is that the arrest warrant in his case shows that he was redetained pursuant to 8 U.S.C. § 1226, which entitled him to a bond hearing. Filing 8 at 12–13.

The warrant does not indicate the statutory basis for Mor's detention. The warrant directs "[a]ny immigration officer authorized pursuant sections 236 and 287 of the Immigration and Nationality Act [8 U.S.C. § 1226 and § 1357, respectively,] and part 287 of title 8, Code of Federal Regulations, to serve warrants for immigration violations . . . to arrest and take into custody [Mor]" for the stated reason of "the pendency of ongoing removal proceedings against the subject." Filing 7-2 at 1. The reference to "[a]ny immigration officer authorized pursuant to 236 [§ 1226]" does not demonstrate that Mor was detained pursuant to § 1226(a). Rather, it states that the immigration officer arresting the alien must be "authorized pursuant to section[ ] 236." Filing 7-2 at 1. Section 236 (§ 1226(a)) permits the arrest of an alien "[o]n a warrant issued by the Attorney General," but that authorization for arrest on a warrant does not establish that the alien is or is to be detained under § 1226(a) when arrested. 8 U.S.C. § 1226(a).

More importantly, in *Avila*, the Eighth Circuit explained,

> In defining [applicant for admission], § 1225(a)(1) reads as follows:
>
> > An alien present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission.

*Avila*, 170 F.4th at 1133 (quoting § 1225(a)(1)). Mor was present in the United States and he was not admitted, so he plainly fell within the definition of an "applicant for admission." *See* 8 U.S.C.

§ 1225(a)(1). Although he was initially paroled into the United States, his parole was cancelled, and he was instead released on his own recognizance. *See* Filing 7 at 3 (¶¶ 13–14); Filing 1 at 2 (¶ 4) (alleging release on recognizance); Filing 1-3 (Order of Release on Recognizance). As the Eighth Circuit explained in *Avila*, "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). Thus, Mor was subject to mandatory detention as an "applicant for admission" when he was redetained. *Id*. This Court has held that redetention of an alien who was paroled is proper pursuant to § 1225(b) under *Avila*, and thus the alien is not entitled to a bond hearing. *See, e.g.*, *Begay Mayancha v. Mullin*, No. 4:26CV3322, 2026 WL 3216328, at *8 (D. Neb. Oct. 27, 2026). Mor's contention that he was not subject to mandatory detention under § 1225(b)(2) because he was released on his own recognizance likewise finds no support in the language of the statutes at issue as construed by the Eighth Circuit in *Avila*. *Uulu v. Mullins*, No. 4:26CV3142, 2026 WL 1463690, at *1 (D. Neb. May 26, 2026).

Mor has not carried his burden to show that he is entitled to habeas relief on his due process claim in Count I. *See Maldonado*, 2025 WL 2374411, at *4 (placing the burden on the habeas petitioner (collecting cases)).

2. *The Due Process Claim Based on Lack of a Hearing Lacks Merit*

In Count II of his Petition, Mor alleges succinctly, "The lack of a pre-deprivation bond hearing with the burden on the government violated Petitioner's due process rights." Filing 1 at 11 (¶ 52). However, the Court determined above that Mor was properly redetained under § 1225(b), which has no provision for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). Because such detention passes the proper due process test, *see Banyee*, 115 F.4th at

933, Mor has failed to carry his burden to show that he is entitled to habeas relief on his due process claim in Count II. *See Maldonado*, 2025 WL 2374411, at *4 (placing the burden on the habeas petitioner (collecting cases)).

*3. The Substantive Due Process Claim Lacks Merit*

In Count III of his Petition, Mor asserts a claim that "[r]e-detention for an alien who is not a flight risk or dangerous violates substantive due process rights by failing to serve a non-punitive purpose." Filing 1 at 11 (¶ 55). The Court finds that this claim is simply a repackaging of Mor's other claims that his redetention without a bond hearing or proper showing violates his due process rights. For the reasons stated above, this claim also fails. Essentially, Mor's redetention pursuant to § 1225 without a bond hearing—which was not for a punitive purpose but pending removal—is proper and did not require a showing of dangerousness or flight risk.

Thus, Mor has failed to carry his burden to show that he is entitled to habeas relief on the substantive due process claim in Count III. *See Maldonado*, 2025 WL 2374411, at *4 (placing the burden on the habeas petitioner (collecting cases)).

**B. Mor's Remaining Claims**

Mor's remaining claims are different from those that the Court has recently addressed in aliens' § 2241 habeas cases. However, these claims also lack merit.

*1. The Equal Protection Claim Lacks Merit*

In Count IV of his Petition, More asserts a "Violation of the Equal Protection Guarantee of the Fifth Amendment." Filing 1 at 11. Mor alleges that he is a citizen and national of India; that he has no felony convictions or record of violent or dangerous behavior, only minor offenses; and that he has cooperated fully with immigration authorities since entering the United States. Filing 1 at 12 (¶ 59). He then alleges,

> 60. The government's treatment of Petitioner creates an unjustifiable disparity between him and similarly situated detainees who receive individualized bond hearings. The Fifth Amendment prohibits the government from treating similarly situated persons differently without a rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); Bolling v. Sharpe, 347 U.S. 497, 499 (1954).
>
> 61. DHS's categorical reliance on section 235(b) to foreclose Petitioner's access to custody review—despite his placement in § 240 proceedings—lacks a rational connection to any legitimate governmental purpose. Disparate treatment based solely on disputed and unreviewed facts regarding manner of entry is arbitrary and not rationally related to the goals of ensuring appearance or protecting public safety. *See Zadvydas*, 533 U.S. at 690 (civil detention must relate to its permissible purposes).

Filing 1 at 12 (¶¶ 60–61). Mor contends further that "DHS has provided no individualized or rational explanation for why Petitioner, unlike others in the same statutory posture, is denied access to an individualized custody determination." Filing 1 at 13 (¶ 63). Thus, he argues that his detention is arbitrary and discriminatory in violation of equal protection. Filing 1 at 13 (¶ 64).

Federal Respondents argue that this claim is "insufficiently pled and completely without merit." Filing 5 at 15. Federal Respondents state,

> It is difficult to understand how Petitioner's counsel can argue in good faith that DHS is withholding a bond hearing against him based solely on his Indian citizenship when both Parties and the Court are well aware that DHS is uniformly applying mandatory detention to those aliens who meet the elements under 8 U.S.C. §1225 and when, in this case, Petitioner immediately upon his apprehension admitted to the NSP Troopers that he was in the country illegally.

Filing 5 at 15. Mor offers no argument in further support of his equal protection claim in his Reply. Filing 8.

The Court concludes that this Count fails to state a claim. To succeed on an equal protection claim, a claimant must at the very least allege or show that he was treated differently than others based on a protected characteristic. *See Clark v. Clark*, 926 F.3d 972, 980 (8th Cir. 2019) ("To prove an equal protection claim in the context of a police interaction, Gregory must prove that the officer exercised his discretion to enforce a law solely on the basis of race."). Mor alleges that he

was treated differently than other detainees who received bond hearings, but he identifies no protected characteristic as the basis for such different treatment. Filing 1 at 12 (¶ 60). Immediately thereafter Mor accuses DHS of categorically relying on section INA 235(b) (8 U.S.C. § 1225(b)) to foreclose custody review thus alleging that everyone—regardless of race or other protected characteristic—is given the same treatment. Filing 1 at 12 (¶ 61).

Thus, Mor has failed to carry his burden to show that he is entitled to habeas relief on his equal protection claim in Count IV. *See Maldonado*, 2025 WL 2374411, at *4 (placing the burden on the habeas petitioner (collecting cases)).

*2. The Suspension Clause Claim Lacks Merit*

In Count V of his Petition, Mor alleges "Violation of the Suspension Clause of the United States Constitution." Filing 1 at 13. He asserts that the suspension clause guarantees the availability of the writ of habeas corpus to challenge the lawfulness of executive detention. Filing 1 at 13 (¶ 67). He alleges, "The government's application of *Matter of Q. Li* to categorically bar all custody review violates the Suspension Clause by depriving Petitioner of an effective and constitutionally required means to challenge unlawful detention." Filing 1 at 14 (¶ 74). There is no other reference to *Matter of Q. Li* in Mor's Petition. Federal Respondents argue that Mor does not allege that the right to petition for a writ of habeas corpus was suspended by anyone. Filing 5 at 15–16. Again, Mor offers no argument in further support of his suspension clause claim in his Reply. Filing 8.

In *Matter of Q. Li*, 29 I & N Dec. 66 (B.I.A. 2025), the BIA held that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond

under section 236(a) of the INA, 8 U.S.C. § 1226(a)." *Matter of Q. Li*, 29 I & N Dec. at 69. Thus, this claim is simply another attack on Mor's detention pursuant to § 1225(b) rather than § 1226(a).

"[T]he [Supsension] Clause, at a minimum, 'protects the writ as it existed in 1789,' when the Constitution was adopted." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116 (2020) (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)). Here, as in *Thuraissigiam*, "[t]his principle dooms [Mor's] Suspension Clause argument, because [he has not] shown that the writ of habeas corpus was understood at the time of the adoption of the Constitution to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *Id.* at 117. Moreover, there is simply no coherent allegation in Mor's Petition of how application of § 1225(b) plausibly suspends the writ of habeas corpus. The Court has entertained Mor's Petition, and denial of that Petition is not a suspension of the writ.

Thus, Mor has failed to carry his burden to show that he is entitled to habeas relief on his suspension clause claim in Count V. *See Maldonado*, 2025 WL 2374411, at *4 (placing the burden on the habeas petitioner (collecting cases)).

*3. The* Accardi *Doctrine Claim Lacks Merit*

Mor's last claim in his Petition asserts "Violation of the *Accardi* Doctrine with Respect to 8 C.F.R. § 287.8(c)(2)(i) and (ii)." Filing 1 at 14. Mor alleges that under the *Accardi* doctrine, federal agencies are required to follow their own binding regulations, and failure to do so renders resulting agency action unlawful. Filing 1 at 15 (¶ 76) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954)). He alleges further,

> 77. The United States has also failed to follow immigration-specific arrest and processing regulations. Regulations governing immigration enforcement require that warrantless arrests comply with the standards set forth in 8 C.F.R. § 287.8(c). Specifically, for any arrest, immigration officers must have reason to believe that an individual committed an offense against the United States or was present in the United States illegally. 8 C.F.R. § 287.8(c)(2)(i). And, for a

> warrantless arrest, officers must also have reason to believe that an individual is "likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii).
>
> * * *
>
> 79. Petitioner was not evading law enforcement, was not subject to any criminal investigation, posed no danger to any person or to the community, and presented no risk of flight. There was no factual basis to conclude that Petitioner was "likely to escape before a warrant could be obtained," as required by 8 C.F.R. § 287.8(c)(2)(ii).

Filing 1 at 15 (¶¶ 77, 79). Thus, Mor alleges that arresting officers failed to comply with the mandatory requirements of the regulation in arresting him without a warrant. Filing 1 at 15 (¶ 80).

Federal Respondents do not respond to this argument in their Return, but the supporting declaration of Supervisory Detention Officer Michael Spearman does clarify the circumstances of Mor's arrest:

> 19. On August 12, 2026, the Nebraska State Patrol (NSP) interdiction team was at a bus station in Omaha, NE, 1601 Jackson street. The NSP officer observed the subject engaging in behavior that appeared intended to avoid detection. When the officer approached the individual and attempted to make contact, the individual fled on foot. NSP quickly apprehended the Petitioner. During the initial encounter the Petitioner stated he ran because he was in the country illegally. After admitting being in the U.S. illegally, NSP contacted ICE/ERO Office in Omaha, Nebraska for assistance. ICE officers searched databases which indicated the Petitioner was currently in non-detained proceedings in California. Based on the subject's prior arrests, which ICE ERO determined violated the conditions of his [Order of Release on Recognizance (OREC)], ICE ERO issued an administrative warrant. Due [to] severe weather conditions, the NSP interdiction team transported the subject to the ICE ERO office at 1717 Avenue H East, Omaha, Nebraska 68110. Upon arrival, ICE ERO assumed custody of the subject and served the administrative warrant.

Filing 7 at 4 (¶ 19).

DO Spearman's declaration demonstrates that there was no violation of 8 C.F.R. § 287.8(c)(2), so there was no violation of the *Accardi* doctrine. Assuming that Mor's arrest was without a warrant—because even though a warrant was issued for his arrest, it was not served until Mor had already been transported to the ICE ERO office—the arrest satisfied the requirements of the cited regulation. First, ICE officers conducted a record search showing good cause to believe

Mor had violated the conditions of his release into the United States on recognizance, and Mor admitted that he was in the country illegally. Filing 7 at 4 (¶ 19); 8 C.F.R. § 287.8(c)(2)(i) ("An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States."). The NSP officers also had adequate reason to believe that Mor was likely to escape before a warrant could be obtained because he had attempted to flee when officers approached. Filing 7 at 4 (¶ 19); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

Thus, Mor has failed to carry his burden to show that he is entitled to habeas relief on his *Accardi* doctrine claim in Count VI. *See Maldonado*, 2025 WL 2374411, at *4 (placing the burden on the habeas petitioner (collecting cases)).

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Bhupinder Mor's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, Filing 1, is denied in its entirety.

The Clerk of Court shall close the case.

Dated this 4th day of November, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge